IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES L. GARY,** | |
| **Plaintiff,** | |
| v. | Case No. 23-cv-768-NJR |
| **UNITED STATES OF AMERICA, KATHY HILL, DAN SPROUL, C. DAVIS, J. LECLAIR, NATHAN SIMPKINS, SHANNON WALLACE, C/O HOWELL, C/O COOK, DARNELL W. MOON, and UNKNOWN NAMED OFFICERS OF THE UNITED STATES BUREAU OF PRISONS,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff James L. Gary, an inmate of the Federal Bureau of Prisons ("FBOP") who is currently incarcerated at Federal Correctional Institution–Schuylkill ("FCI–Schuylkill"), brings this action for deprivations of his constitutional rights pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80. Gary alleges Defendants were negligent to the conditions of his confinement while at the United States Penitentiary in Marion, Illinois ("USP-Marion").

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Gary makes the following allegations: Gary's claims arose while he was housed at USP-Marion. Gary alleges that he was transferred to USP–Marion after a lieutenant falsely accused him of introducing narcotics into the prison while housed at USP–Thomson. Upon his arrival at Marion, Kathy Hill informed Gary that he was placed at Marion due to the accusations of narcotics trafficking, despite having all disciplinary charges related to the matter expunged. Hill informed Gary that she would not let him get away with such conduct at Marion. Hill also denied Gary's request to add his mother to his contact list (*Id*. at p. 4).

Gary alleges that after his arrival at Marion, Hill sought to charge Gary with drug trafficking. She enlisted the help of fellow inmate Ruben Delgado, who befriended Gary and encouraged Gary to smuggle narcotics into the prison, despite Gary maintaining that he had never smuggled drugs into his prior prison. Gary alleges Delgado is a career informant who participates in schemes in order to obtain reductions in his sentence (*Id*. at p. 4). Delgado continued to encourage Gary to obtain narcotics, but Gary refused. In February 2021, Delgado, himself, obtained synthetic cannabinoids ("K2"). Gary believes Hill was aware of Delgado's actions because Gary witnessed Hill and Delgado discuss the K2 in March 2021 (*Id*. at p. 5).

On April 23, 2021, Gary entered quarantine at the prison, prior to a scheduled upper endoscopy, and was moved from his current cell assignment to a quarantine area of the prison (*Id.* at p. 6). While in quarantine, Gary alleges that Delgado and Hill conspired to place contraband in Gary's cell (*Id.*). Upon returning from his medical procedure on April 26, 2021, Gary witnessed guards searching his former cell. Gary was placed in the special-housing unit ("SHU") because of the K2 (*Id.* at p. 7). Gary alleges that Delgado placed the K2 in Gary's cell at the direction of Hill (*Id.*). But he later learned from another correctional officer that no contraband had been located during the search of his cell (*Id.*). On April 28, 2021, correctional officer Robinson searched the cell and was unable to locate contraband. Gary contends that after the initial search, Delgado requested access to Gary's former cell and entered the cell on April 29, 2021 (*Id.* at p. 8). Later that same day, Hill again searched the cell and located notebook paper wrapped in cellophane inside a conduit pipe, which she alleged tested positive for narcotics (*Id.* at p. 9). Gary was charged with possession of drugs (*Id.*). Hill and other unknown officers at the prison subsequently presented false and misleading evidence to the officials charged with making criminal referrals (*Id.* at p. 10). Gary was not charged criminally, but the prison pursued disciplinary charges against Gary based on Hill's findings.

Hill also barred Gary from utilizing his phone privileges and prevented him from calling family, despite the fact that his daughter went missing during the same time period and was ultimately found deceased (*Id.* at p. 11). While being housed in the SHU awaiting disciplinary proceedings, Gary was housed in the sweltering heat, a known problem in that part of the prison. Gary alleges that Kathy Hill, Dan Sproul, C. Davis,

J. LeClair, Nathan Simpkins, Shannon Wallace, correctional officer Cook, and unknown officers were aware, or should have been aware, of the sweltering conditions in that area of the prison, but failed to remedy the situation. The cell also housed a large spider nest. Gary was denied access to all of his property and all contact with the outside due to the restrictions on his phone privileges (*Id*. at p. 12). Gary was able to communicate to other inmates through a window in his cell, but Hill and Dan Sproul directed that the windows be closed. Officer Nathan Simpkins closed the windows at the direction of Hill and Sproul, despite expressing concerns about the temperatures in the SHU (*Id*. at p. 13). Gary and other inmates complained about the temperatures in the SHU to Dan Sproul, custody captain C. Davis, Nathan Simpkins, and associate warden J. LeClair, but no relief was provided (*Id*. at p. 14).

On June 4, 2021, correctional officer Howell brought in a large yellow commercial fan labeled "Big Ass Fan" (*Id*. at p. 14). Howell placed the fan directly in front of Gary's cell, informing Gary that Hill directed him to bring the fan to Gary. Another officer informed Gary that the defendants must hate him because they instructed that the fan be placed in front of his cell (*Id*. at pp. 14-15). The noise from the fan was deafening, causing ringing in Gary's ears (*Id*. at p. 15). Gary spoke to a lieutenant about the noise from the fan, and the lieutenant acknowledged that the noise was a problem. He promised to raise the issue with Sproul. Despite the fan being turned off on occasion, Gary was subjected to the fan for the majority of his time in the SHU (*Id*. at pp. 15-17).

On June 15, 2021, in response to another inmate's letters to his attorney, an official from Marion's safety department measured the decibels from the fan at over 200 dB and

immediately instructed staff to move the fan down the hallway and away from all occupied cells (*Id.* at p. 17). Another fan was placed directly in front of Gary's cell. Although this fan measured at a level of 157 dB, the safety department directed that the fan be turned down to 87 dB (*Id.* at p. 18). But Gary still suffered from ringing in his ears, which prevented him from sleeping (*Id.*).

On July 13, 2021, Gary was exonerated of the drug charges in a disciplinary hearing. Officer Robinson testified that he previously searched Gary's cell with the proper equipment and found no drugs in the cell. Nor did Gary have access to the cell after Robinson's search. He also testified that Hill did not use proper tools to search the cell days later and could not have disassembled the light fixtures and located the drugs as she previously alleged (*Id.*). Despite having the charge expunged, Gary remained in the SHU until July 22, 2021 (*Id.* at p. 19). Gary alleges that he remained in the SHU due to a "threat assessment" evaluation initiated by Hill (*Id.*). Although Gary was ultimately released from the SHU, he continued to have ringing in his ears, which interrupted his sleep (*Id.* at p. 20). Medical staff diagnosed him with tinnitus and determined that the damage to his ears was untreatable (*Id.*). At a subsequent institution, Gary was diagnosed with mild to moderate hearing loss and tinnitus (*Id.* at p. 31).

After his release from the SHU, Hill changed Gary's housing assignment on numerous occasions. She moved him to the loudest parts of the prison and changed his cell assignment frequently (*Id.* at p. 20). On August 12, 2021, Gary reported Hill to the Justice Department's Office of the Inspector General ("OIG") (*Id.* at p. 21). After learning of the report, Hill interfered with Gary's ability to utilize the phone system and withheld

his mail for weeks at a time (*Id*.). Hill also prevented Gary from obtaining a job at the prison (*Id*. at pp. 21-22). Hill also allegedly conspired with another inmate, Darnell W. Moon, to retaliate against Gary. Allegedly, Moon would file false complaints against inmates who filed complaints against Hill (*Id*. at p. 23). Moon filed a false complaint against Gary under the Prison Rape Elimination Act ("PREA") (*Id*. at p. 23-24). Although every complaint from Moon was ultimately deemed unsubstantiated, Hill used the allegations to hold Gary and other inmates in the SHU for "threat assessments" (*Id*.). On October 7, 2021, the PREA complaint was deemed unfounded but Gary remained in the SHU for a threat assessment based on Hill's orders (*Id*. at pp. 24-25). Moon also filed a civil complaint against Gary that was later dismissed (*Id*. at pp. 25- 30). Gary alleges that Hill continued to abuse her position in order to keep Gary in the SHU (*Id*. at p. 26). Although Moon was subsequently caught threatening to bring false claims against another inmate and transferred out of Marion, Hill conspired with another inmate to bring false claims against Gary. These actions prevented Gary's release from the SHU as he was the subject of a "threat assessment" evaluation (*Id*. at p. 29). Gary was ultimately transferred to FCI–Terre Haute, which Gary alleges is a less desirable location and considered "punitive" (*Id*.).

**Preliminary Dismissals**

Gary raises of a number of claims pursuant to the FTCA. But to the extent he raises abuse of process and malicious prosecution claims, those claims are excluded from the FTCA. Federal prisoners may bring suit against the United States under the FTCA for injuries they sustain while incarcerated. *See Palay v. United States*, 349 F.3d 418, 425 (7th

Cir. 2003). The FTCA specifically excludes certain claims, however, including claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights'" unless committed by a Government officer who is empowered to make arrests. 28 U.S.C. § 2680(h). Thus, Gary's claims for abuse of process and malicious prosecution related to the allegedly false charges for drugs and threat assessment holds are barred by this section of the statute.

Gary also proposed to bring claims against inmate Darnell W. Moon for falsifying PREA claims against him (Doc. 1, pp. 40-44). Gary cannot maintain a FTCA claim against a fellow inmate because Moon is not a federal employee or a person who acted under the color of federal authority. 28 U.S.C. § 2679(b)(1) (FTCA claim may be brought against government employee acting within the scope of his/her employment). All claims against Moon are, accordingly, **DISMISSED with prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** **Negligence claim under Illinois state law against Defendants for operating the large fan directly outside of Gary's cell causing permanent hearing loss and tinnitus.**
>
> **Count 3:** **Intentional and/or negligent infliction of emotional distress claim under Illinois law for placing Gary in the SHU on false charges and subjecting him to damaging noise levels and excessive heat.**
>
> **Count 4:** **Eighth Amendment claim against Kathy Hill, Dan Sproul, C. Davis, J. LeClair, Nathan Simpkins, Shannon Wallace,**

> **Howell, Cook, and unknown officers for cruel and unusual punishment resulting from Gary's placement in the SHU with "sweltering heat" and the large fan.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

The FTCA authorizes "civil actions on claims against the United States, for money damages ... for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Under the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). When analyzing an FTCA claim, the Court looks to the law of the state where the misconduct occurred. *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013). Gary was housed at USP–Marion at the time his claims arose. Thus, Illinois law controls his claims.

---

[1] This includes any claims for medical negligence related to Gary's hearing issues. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face"). Gary specifically states that he does not intend to pursue a malpractice claim related to his medical care and hearing issues (Doc. 1, p. 17).

**Count 1**

In Count 1, Gary alleges that Defendants were negligent in placing a large fan in front of his cell at dangerous levels, which caused permanent damage to his ears. In order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Gary alleges that the BOP and the individual defendants failed in their duty to provide safe and suitable quarters pursuant to 18 U.S.C. § 4042(a)(2) and (3). He alleges that defendants breached that duty when they placed Gary in solitary confinement in front of a large fan, run at dangerous noise levels. As a result of the defendants' actions, Gary alleges that he suffered permanent hearing loss and tinnitus. At this stage, Gary states a viable negligence claim.

**Count 2**

As to Gary's intentional infliction of emotional distress claim in Count 2, he must show that the BOP officials acted in an extreme and outrageous way, intending to inflict severe emotional distress or knowing there was a high probability that would occur and causing the plaintiff severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). Negligent infliction of emotional distress requires a plaintiff to allege the "traditional elements" of negligence, including duty, breach, causation, and damages. *Harris v. United States*, No. 13-CV-8584, 2017 WL 770969, at *6 (N.D. Ill. Feb. 28, 2017). Gary sets forth sufficient facts to state a claim for both intentional and negligent infliction of emotional distress. Gary

alleges that he not only suffered emotional distress due to the issues with his hearing, but he was also placed on suicide watch, had difficulties coping with the loss of his daughter, and was unable to communicate with his family. These allegations are enough to state a claim at this early stage.

**Count 3**

Count 3 is a constitutional claim for violations of the Eighth Amendment. Specifically, Gary alleges that the individual defendants were deliberately indifferent to his conditions of confinement when they subjected him to the loud noises of the fan and temperatures in the SHU. Such claims must be brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The scope of claims brought pursuant to *Bivens* has been the subject of much scrutiny. *See Egbert v. Boule*, 596 U.S. 482, 491-92 (2022). In *Bivens*, the Supreme Court enforced a damages remedy against federal narcotics agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures by arresting a man in his home and conducting a search without a warrant or probable cause. *See Bivens*, 403 U.S. at 392. The Supreme Court later expanded the implied damages remedy to a Fifth Amendment due process claim involving discrimination, *see Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim for deliberate indifference to the medical needs of a prisoner. *See Carlson v. Green*, 446 U.S. 14 (1980). Since those rulings, the Supreme Court has cautioned courts against further expansion of this remedy. *See Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Egbert*, 596 U.S. 482; *Hernandez v. Mesa*, 589 U.S. ---, 140 S.Ct. 735 (2020). Where a claim arises in a new context, courts are now required to consider whether special factors counsel hesitation in recognizing the

implied damages remedy. To determine whether a *Bivens* remedy is available to Gary for his claims against the defendants, the Court must ask whether the claim presents a new *Bivens* context. *Egbert*, 596 U.S. at 492. If so, the Court also must consider whether any special factors counsel hesitation in granting an extension of this remedy into the next context. *Id.*

Gary's claim arises under the Eighth Amendment, which imposes a duty on prison officials to provide humane conditions of confinement that include adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Whether Gary's claim regarding the conditions he experienced in the SHU fits squarely within the confines of the Eighth Amendment claim at issue in *Carlson* or presents a new context altogether is not clear. *See Sargeant v. Barfield*, 87 F.4th 358, 369 (7th Cir. 2023). This court would benefit from further briefing on the matter and on whether any "special factors" suggest that the Judiciary is less equipped than Congress to decide whether a damages actions should proceed. The issue of whether this claim is foreclosed by the United States Supreme Court's decisions in either *Ziglar* or *Egbert* can be addressed in a motion filed pursuant to Federal Rule of Civil Procedure 12 or 56.

Turning to Gary's claim in Count 3, in order to state a claim for deliberate indifference under the Eighth Amendment, an inmate first must show that the alleged deprivation is sufficiently serious from an objective standpoint. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). Second, an inmate must also demonstrate that each defendant acted with a subjectively culpable state of mind, in this case deliberate indifference. *Id.* At this stage, Gary adequately alleges that Kathy Hill, Dan Sproul,

Nathan Simpkins, J. LeClair, C. Davis, and Howell were deliberately indifferent to his conditions of confinement. Gary alleges that Hill ordered that he be placed in the SHU and the windows closed (Doc. 1, pp. 12-13). He also alleges that Dan Sproul issued the directive regarding the fan and window. Nathan Simpkins was also aware of the heat, and confirmed the decision with Sproul before closing the windows (*Id*. at p. 13). Gary also alleges that Howell placed the fan in front of his cell on the highest setting, noting that he was placing the fan at the direction of Hill (*Id*. at pp. 14-15). Finally, Gary alleges that he and other inmates complained about the heat to Sproul, C. Davis, J. LeClair, and Nathan Simpkins but they refused to remedy the conditions (*Id*. at p. 14).

Gary fails, however, to state a claim against Shannon Wallace and Cook. There are no facts to indicate that Gary informed Wallace or Cook of his conditions, or that they participated in his placement in the SHU. Thus, Shannon Wallace and Cook are **DISMISSED without prejudice**. As to the unknown officers, Gary fails to point to a specific individual, nor does he describe any of these officers. Although Gary may certainly proceed against identified John Does (*i.e.* John Doe #1, John Doe #2, *etc*.), his potential claim against Unknown Named Officers fails to state a claim.

### Proper Defendant

The United States is the only proper defendant in an FTCA action. *See* 28 U.S.C. § 2679(b); *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008). Gary names the United States as a defendant, but he also names individual officers as defendants in Counts 1 and 2. Gary cannot maintain an FTCA claim against the individual defendants, and thus they

are **DISMISSED with prejudice** as to Counts 1 and 2. Gary's claims in Counts 1 and 2 shall proceed against the United States of America.

## Disposition

For the reasons stated above, Counts 1 and 2 shall proceed against the United States of America. Count 3 shall proceed against Kathy Hill, Dan Sproul, Nathan Simpkins, J. LeClair, C. Davis, and Howell. All other defendants and claims are **DISMISSED**.

The Clerk of Court shall prepare, on Gary's behalf, a summons and form USM-285 for service of process on the United States of America, Kathy Hill, Dan Sproul, Nathan Simpkins, J. LeClair, C. Davis, and Howell; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve the United States and the individual defendants pursuant to Federal Rule of Civil Procedure 4(e). All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint (Doc. 1), and this Memorandum and Order. The Clerk shall also send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint (Doc. 1), and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Gary, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Gary is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: January 9, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**