## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES L. GARY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-cv-768-NJR** |
| **UNITED STATES OF AMERICA, KATHY HILL, DAN SPROUL, CHRISTOPHER DAVID, J. LECLAIR, NATHAN SIMPKINS, and GEORGE HOWELL,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff James L. Gary, an inmate of the Federal Bureau of Prisons ("BOP") who is currently incarcerated at Federal Correctional Institution – Terre Haute ("FCI – Terre Haute"), brings this action for deprivations of his constitutional rights pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Gary alleges Defendants were negligent and deliberately indifferent to his conditions of confinement at the United States Penitentiary in Marion, Illinois ("USP – Marion").

This matter is currently before the Court on motions for summary judgment filed by the United States (Doc. 64), Dan Sproul, Nathan Simpkins, George Howell, Christopher David, J. LeClair, and Kathy Hill (Doc. 66). Gary filed a response (Doc. 68) in opposition to the individual defendants' motion (Doc. 66). On February 27, 2025, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). After the

hearing, the Court directed the United States to file a responsive brief regarding an issue related to the FTCA claim. On March 14, 2025, the United States filed its response (Doc. 74).

### BACKGROUND

Gary's Complaint alleges a variety of negligent and wrongful acts that occurred while he was incarcerated at USP – Marion (Doc. 1). While at Marion, Gary was issued disciplinary charges in April 2021 and placed in the Special Housing Unit ("SHU") to await disciplinary proceedings for contraband (Doc. 17, p. 3). Gary alleges that the charges were false and issued intentionally by Kathy Hill (*Id*.). Although Gary was later exonerated of the charges at a disciplinary hearing, he spent time in the SHU where he was barred from utilizing his phone privileges (*Id*.). This prevented him from calling family during a time where his daughter was missing and ultimately found deceased (*Id*.). Gary alleges that while he was in the SHU he was subjected to sweltering heat, a known problem at the prison (*Id*.). The windows in the unit were also closed, despite concerns about the temperatures in the SHU (*Id*. at p. 4). Gary and other inmates complained to Dan Sproul, C. David, Nathan Simpkins, and associate warden J. LeClair, but they failed to take action to remedy the temperatures in the unit (*Id*.).

On June 4, 2021, correctional officer George Howell brought a large commercial fan into the unit and placed it directly in front of Gary's cell (Doc. 17, p. 4). Howell informed Gary that Hill ordered the fan be placed in front of Gary's cell. The noise was deafening, causing ringing in Gary's ears (*Id*.). The fan was on the majority of the time while Gary was housed in the SHU (*Id*.). On June 15, 2021, an official from Marion's safety department measured the decibels ("dB") from the fan at over 200 dB and instructed staff to move the fan away from occupied cells (*Id*. at pp. 4-5). Another fan was placed directly in front of Gary's

cell. This fan originally measured at 157 dB but the safety department directed that it be turned down to 87 dB (*Id*. at p. 5). Gary still suffered from ringing in his ears (*Id*.).

On July 13, 2021, Gary was exonerated of his charges in a disciplinary hearing. Despite being cleared of the charges, he remained in the SHU until July 22, 2021 (*Id*. at p. 5). He was eventually released but continued to suffer from ringing in his ears which interfered with his sleep (*Id*.). Gary was ultimately diagnosed with tinnitus and informed by medical staff that the damage was untreatable and permanent (*Id*.). At his next institution, Gary was diagnosed with mild to moderate hearing loss and tinnitus (*Id*.).

After review of his Complaint, Gary was allowed to proceed on the following claims:

Count 1:      FTCA claim for negligence under Illinois state law for the operation of the large fan directly outside of Gary's cell causing permanent hearing loss and tinnitus.

Count 2:      FTCA claim for intentional and/or negligent infliction of emotional distress under Illinois law for placing Gary in the SHU on false charges and subjecting him to damaging noise levels and excessive heat.

Count 3:      Eighth Amendment claim against Kathy Hill, Dan Sproul, Christopher David, J. LeClair, Nathan Simpkins, and George Howell for cruel and unusual punishment resulting from Gary's placement in the SHU with "sweltering heat" and the large fan.

(Doc. 17, pp. 7-8).[1]

### A. FTCA Claims

Gary filed only one administrative tort claim regarding his FTCA claims against the United States in Counts 1 and 2. Nina Fields, Legal Assistant for the Legal Services Office of the BOP at the North Central Regional Office, submitted a declaration indicating that she

---

[1] The counts have been renumbered for clarity purposes.

searched the database for all administrative tort claims received by the BOP from Gary (Doc. 64-1, p. 2). Fields completed a search of the database using Gary's first/last name and his Register Number: 09112-045 (*Id.* at p. 3). She found 12 total tort claims but only five were filed between April 28, 2021, and July 21, 2021 (*Id.*). Of those tort claims, only one related to Gary's claims in this case.

> **Tort Claim TRT-NCR-2002-01601:** On September 28, 2021, Gary submitted a Tort Claim seeking $850,000 for injuries he allegedly sustained at USP - Marion (Doc. 64-1, p. 7). Specifically, Gary noted that inmate Ruben Delgado, an informant working with Intelligence Research Specialist Kathy Hill at USP – Marion, planted drugs in Gary's cell at Hill's request. Hill then wrote Gary a false "shot" (*Id.* at p. 7). When her story began to fall apart, Hill retaliated against Gary by placing a 180 dB fan outside of his cell; "[t]his fan has caused Gary a continuing ringing in the ears, and he has suffered serious, lasting, and grave emotional distress from the experience." (*Id.*). Gary noted that the incident took place between April 28, 2021 and July 21, 2021 (*Id.*). He claimed that his injuries included ringing in his ears, hearing loss, and emotional distress (*Id.*). Gary's Tort Claim was received by the North Central Regional Office on November 15, 2021 (Doc. 64-1, p. 6). On December 23, 2021, Gary was notified of the receipt of his Tort Claim and informed that the agency had six months to review and make a determination on his claim (*Id.* at p. 10). The agency's response was due May 14, 2022 (*Id.*). On August 12, 2022, a letter was issued to Gary noting that the investigation was completed and there was no indication that he suffered personal injury as the result of any negligent actions of BOP employees (*Id.* at p. 12). His claim was denied (*Id.*).

Fields noted that Tort Claim TRT-NCR-01601 was considered fully exhausted under the FTCA (*Id.* at p. 4). The United States acknowledges that Tort Claim TRT-NCR-01601 exhausted Gary's FTCA claims as to his claims in Count 1 and Count 2, but only as to the damaging noise levels he experienced in the SHU. The United States argues that Gary's Tort Claim failed to include any allegations about being subjected to excessive heat or emotional distress as the result of being placed in the SHU on false charges.

**B.** *Bivens* **Claim**

Turning to Gary's *Bivens* claim against the individual defendants, Sarah Byram, Unit

Manager and Acting Executive Assistant at USP – Marion, stated in her declaration that

administrative remedy requests submitted by inmates are logged in SENTRY, the BOP's

electronic data entry system (Doc. 66-1, p. 2). She searched Gary's administrative remedy

submissions and found a total of 26 BP-9's, the first formal request submitted at the

institutional level when pursuing an administrative remedy request (*Id*. at p. 5). Byram

testified that Gary submitted one remedy related to his claims.

> **Remedy Case #1094018**: The records from the BOP's SENTRY database note
> that Gary submitted Remedy # 1094018 on September 13, 2021 (Doc. 66-1,
> p. 43). The "abstract" of the remedy notes that Gary was complaining about
> SHU placement. The remedy was rejected because the date of the complained
> of event took place on April 29, 2021, but Gary did not sign his BP-9 until
> August 24, 2021, meaning it was filed 112 days after the incident at issue (*Id*.).
> Inmates are required to file an administrative remedy within 20 days of the
> alleged event at issue. Although Gary pursued the remedy through subsequent
> levels of the process, it was rejected at each stage for being untimely (*Id*. at
> pp. 43-44). Byram testified that the only record of Gary's remedy is the records
> in SENTRY, and the original remedy was discarded because it was rejected
> (Doc. 66-1, p. 6). But Gary produced copies of his remedy forms with his
> response (Doc. 68, pp. 5-8). Gary's BP-9 form indicates that he was wrongfully
> placed and held in the SHU from April 28 or 29, 2021 until July 21, 2021
> (Doc. 68, p. 8). He alleges that his placement was due to Kathy Hill's order
> directing an inmate to plant drugs in Gary's cell (*Id*.). The form notes that he
> was unable to obtain a formal remedy form from his case manager until
> August 5, 2021. Gary received a false report and Hill lied about Gary's actions.
> Gary's BP-10 form similarly alleges that he was wrongfully placed in the SHU
> and "physically injured" due to the misconduct of Kathy Hill (*Id*. at p. 7). He
> states that he was placed in "abusive conditions" after Hill falsely accused
> Gary of selling drugs and directed another inmate to plant drugs in Gary's cell
> (*Id*.). He alleges that Hill placed a fan in the SHU at 180 dB with the intent to
> injure him and he still suffers from permanent ringing in his ears (*Id*.). Gary
> noted in his appeal that his remedy was wrongfully rejected by Marion because
> Warden Sproul had a policy of refusing to allow all staff misconduct remedies
> to proceed. Although Gary repeatedly requested a BP-9 form, he did not
> receive a form until August 5, 2021 (*Id*.). Similarly, Gary's BP-11 form indicates
> that his previous remedy and appeal were improperly rejected as untimely

even after his case manager submitted a letter on Gary's behalf regarding the remedy's timeliness (*Id*. at p. 5). He again alleged that he was physically injured when he was placed in the SHU due to the false accusations of Kathy Hill (*Id*. at pp. 5-6). While in the SHU, Gary alleged that Hill had the windows closed in extreme heat and ordered two large industrial fans placed in front of Gary's cell (*Id*. at p. 6). The fan stayed on for months at 180 dB (*Id*. at p. 6). Gary alleged that Hill sought to injure him, and he suffered from lack of sleep and continuous ringing in his ears (*Id*.).

As to Gary's claim in Count 3, the individual defendants argue that Gary failed to exhaust his administrative remedies because he failed to file a timely administrative remedy. Remedy Case #1094018 was rejected by the institution as untimely filed because Gary filed the remedy 112 days after the event at issue, well beyond the BOP's required time frame. Inmates are required to submit an administrative remedy within 20 days of the complained of event. Gary's remedy notes that he was improperly housed in the SHU from April 28 or 29, 2021, until July 21, 2021 (Doc. 68, p. 8). Defendants argue that his remedy involved his placement in the SHU on April 29, 2021, and, thus, his August 24 grievance was untimely.

In response, Gary argues that his administrative remedy was untimely because he was in the SHU. Although Gary argues that he properly submitted his informal resolution to his case manager Nathan Simpkins, he was unable to receive a timely BP-9 form due to Simpkins's absence at the prison. Gary argues that Simpkins's policy was to withhold BP-9 forms until he attempted informal resolution. Because Simpkins was absent from Marion for several weeks, Gary was unable to complete the informal resolution process until August 5, 2021, and he did not receive a BP-9 form until August 17, 2021. Gary argues that Simpkins submitted a memo explaining the delay and he resubmitted his BP-10, but his remedy was still denied. He also blamed Hill for failing to assign anyone besides Simpkins to handle informal resolutions and hand out remedy forms.

C. *Pavey* **Hearing**

At the evidentiary hearing, the Court heard testimony about Gary's attempts to exhaust his *Bivens* claim from Gary, Sarah Byram, Kathy Hill, and Nathan Simpkins.

1. *Gary's Testimony*

Gary testified that he was placed in the SHU on April 26, 2021, and the fan was placed in the SHU on June 4, 2021. He was released from the SHU on July 22, 2021. On August 5, 2021, Nathan Simpkins gave Gary a BP-8 form. Gary acknowledged that his BP-8 was dated August 5, 2021, and complained that he was improperly held in the SHU from April 28 or 29, 2021, until July 22, 2021 (Defendants' Exhibit 7). But Gary testified that in addition to his statements in both his BP-8 and BP-9, he also included an attachment that complained about the use of the fan in the SHU, as well as issues with the heat. He noted that the attachment was the same as the attachment to his BP-11 and complained about the conditions in the SHU (Doc. 68, p. 6). Gary contended that although he attached the same page to his BP-8, the attachment was never returned to him. Although Gary previously maintained a handwritten copy of the attachment to his BP-8 and BP-9, he testified that he lost the document at some point during his transfer.

Gary also testified that he was unable to timely file his administrative remedy because he did not receive a BP-8 until after his release from the SHU. The fan was not moved into his unit until June, and officers also shut all of the windows around that time. He talked to the doctors first about the ringing in his ears, and then he spoke to Simpkins sometime in June. But Gary stated that he did not receive a BP-8 until August, after the deadline passed for submitting an administrative remedy.

7

## 2. *Sarah Byram*

Sarah Byram testified that her current position was as unit manager but she previously filled in for the administrative remedies clerk. During that time, she processed administrative remedies filed by the inmates. Byram admitted that her previous declaration regarding Gary's attempts at exhaustion was partially incorrect. Byram initially stated in her declaration that Gary was not housed in the SHU on April 29, 2021. But she corrected her prior statement and testified that Gary was housed in the SHU from April 23, 2021, until July 22, 2021.

As to Gary's administrative remedy regarding his conditions while in the SHU, Byram testified that Gary's BP-9 was rejected as untimely. Gary's subsequent filings of the BP-10 and BP-11 were similarly rejected as untimely. When administrative remedies are rejected as untimely, they are considered a dead issue unless there is a legitimate reason for its untimeliness. Byram noted that Gary submitted his BP-8 on August 7, 2021, and Nathan Simpkins reviewed the remedy on August 17, 2021.

Byram acknowledged that inmates can add attachments to their BP-8 and BP-9 forms, but she testified that the prison does not keep copies of the BP-8s and the attachment—they are given back to the inmate. Although she had a copy of the BP-9, the copy was not from the prison's files. Byram testified that when a remedy is deemed untimely, the BP-9 and attached documents are discarded as part of the process. Further, Gary would have only received a copy of the rejection form and the BP-9; he would not have received all of the attachments.

Byram further testified that either Simpkins or someone from the unit team should have been visiting inmates in the SHU every day and handing out BP-8 and BP-9 forms if requested from an inmate. But she acknowledged that she was not in the unit at the time and was unable to state whether staff had actually entered the unit and offered Gary the requested

forms. She was not aware of any evidence in the record that would prove one way or the other if officials were handing out administrative remedy forms during the time period in question.

### 3. *Kathy Hill*

While employed at USP – Marion, Kathy Hill held a number of positions, including correctional officer, special investigator, correctional counselor, and research specialist for the CMU. Hill is currently retired. In 2021 she was a research intelligence specialist for the CMU. She gathered intelligence, conducted investigations, interviewed inmates, and processed their mail. Hill testified that she knew Nathan Simpkins; he was a case manager in the CMU. She was not his supervisor and was not involved in the administrative remedy process in the CMU. Hill testified that Simpkins, as a case manager, and the unit manager would be able to hand out administrative remedy forms, but she had no involvement in the process in her role as a research intelligence specialist. She was also unable to testify as to whether the unit manager was in the unit on a daily basis.

Hill further testified that her position required her to review incoming mail. She scanned the mail and sent it to the counter-terrorism unit for clearance. If the mail was cleared, it was passed on to the inmate. If the mail was rejected, then she would prepare a rejection form informing the inmate that his mail was rejected. Hill acknowledged that she would receive a BP-10 if it came in the mail, and she would process it by sending it to the counter-terrorism unit for clearance before mailing it out. An inmate would have to wait for the mail to be cleared before it was sent back to him.

### 4. *Nathan Simpkins*

Nathan Simpkins currently works for the United States Marshals Service, but in 2021, he was employed at USP-Marion as a case manager in the CMU unit. The unit manager was Shannon Walls. As a case manager, Simpkins handed out BP-8 and BP-9 forms and tried to resolve issues with inmates in the unit. Simpkins dated the BP-8 when the administrative remedy was received and when he reviewed and gave it back to an inmate. He would also include any attachments given to him with the forms.

Simpkins testified that he knew Gary, who was in the SHU in the CMU in 2021. Simpkins saw him daily during his workdays, which were Monday through Thursday. He did not recall taking a two-week vacation or an extended absence between April and September 2021. He recalled handing out administrative remedies to Gary in 2021 and believed he provided him with several throughout his time in the CMU. If Gary asked him for a BP-8 or BP-9, he would give him the form. He noted that Gary's BP-8 indicated he spoke with Gary on August 5, 2021, in an attempt to informally resolve his issues and handed Gary the BP-8. On August 7, 2021, Gary dated the administrative remedy. On August 17, 2021, Simpkins returned the remedy and provided Gary with a BP-9 form.

Simpkins recalled speaking to Gary while he was in the SHU, although he did not recall whether they specifically discussed the temperatures in the unit. But Simpkins acknowledged that the heat was a common issue because there was no air conditioning in the unit. He also recalled inmates complaining about the noise from the fans in the unit. He acknowledged having a policy of trying to speak with the inmate and resolve any issues informally before providing an inmate with a BP-8. Although he did not specifically recall any conversation with Gary, he acknowledged that it seemed probable that he informed Gary

he would have to look into the issue with the fan and heat and get back to Gary with an answer.

Simpkins also acknowledged that his records indicated that he was out on a number of occasions. From June 20-24, 2021, Simpkins took sick leave each day, anywhere from 30 minutes to two hours of leave each day (Defendants' Exhibit 5, p. 13). From June 28-July 1, 2021, Simpkins was off on annual leave (*Id*.). He was on sick leave on July 22 and July 29. Simpkins testified that he was the only one that delivered administrative remedies as part of his job duties, but he later acknowledged that the unit manger could also hand out BP-8 and BP-9 forms. He admitted he only spoke to inmates in the unit once a day.

Simpkins noted that Gary's BP-8 dealt with Gary's placement in the SHU for drugs. He did not recall if there was an attachment with complaints about the heat and fan noise, but a remedy was only supposed to focus on one issue. Simpkins did recall submitting memos for inmates with their BP-10s but did not recall if he submitted one in this case. An inmate would not receive a copy of that memo; Simpkins attached them in the mail to prevent inmates from having memos that could be used for other purposes. Simpkins testified that he wrote memos for inmates because the remedy process was long and sometimes the timeliness was out of the inmate's control. He remembered writing several memos for inmates but did not recall whether or not he wrote one in this specific instance.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act

("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust

(provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. FTCA Exhaustion Requirements

Gary brought his claim in Counts 1 and 2 pursuant to the FTCA which states that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property…caused by the negligent or wrongful act or omission of any employee of the Government…unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). The exhaustion requirement under the FTCA is a "condition precedent to the plaintiff's ability to prevail." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786-87 (7th Cir. 2014) (quoting *Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997)). "In waiving its sovereign immunity and consenting to suit under the FTCA, the government may require that certain conditions be met prior to the filing of a complaint, such as the completion of a" tort claim form. *Ward v. United States*, 1 F. App'x 511, 513 (7th Cir. 2001). The purpose of exhaustion under the FTCA is "to provide the government with sufficient notice to investigate the claim and prepare for settlement negotiations." *Id.* at 514 (citing *Charlton v. United States*, 743 F.2d 557, 559-60 (7th Cir. 1984)).

To exhaust administrative remedies for claims brought under the FTCA, an inmate must follow the process set forth in 28 C.F.R. § 543.30 *et seq.* An inmate must file a claim "with

13

the appropriate Federal agency for administrative action." 28 C.F.R. § 543.30. For an inmate in the custody of the BOP, exhaustion begins with filing an administrative tort claim with the BOP Regional Office of the region where the claim occurred, 28 C.F.R. § 543.31(c), not the inmate's institution of incarceration. To adequately present a claim to the Regional Office, an inmate must submit "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain …; and the title or legal capacity of the person signing." 28 C.F.R. §14.2(a). *See also Chronis v. United States*, 932 F.3d 544, 547 (7th Cir. 2019) (Presentment of a claim requires "four elements: (1) notification of the incident; (2) demand for a sum certain; (3) title or capacity of the person signing; and (4) evidence of the person's authority to represent the claimant."). Failing to include one of the elements of a proper claim is "only fatal if it can be said to have 'hindered' or 'thwarted' the settlement process 'that Congress created as a prelude to litigation.'" *Smoke Shop, LLC*, 761 F.3d at 787 (quoting *Kanar*, 118 F.3d at 531). If the tort claim contains all necessary information, the inmate should receive an acknowledgment letter notifying the inmate of the Regional Office's receipt of the claim. 28 C.F.R. § 543.32(a). After an investigation has been completed, the BOP's Regional Counsel will issue a decision, either offering a settlement or denying an inmate's claim. 28 C.F.R. § 543.32(c)-(d). If the inmate is dissatisfied with the decision, he may request reconsideration by the BOP. 28 C.F.R. § 543.32(f). The BOP's decision is considered the final agency action, and after receipt of the decision, an inmate may file an FTCA lawsuit in the district court. 28 C.F.R. § 543.32(f). If an inmate fails to receive any response within six months of the date the claim was presented, the claim is considered denied and the inmate may proceed with a lawsuit. 28 C.F.R. § 543.32(h).

14

## B. BOP Exhaustion Requirements

The detailed administrative remedy procedure for federal BOP inmates is set forth in 28 C.F.R. § 542.10 *et seq. See Kaba v. Stepp*, 458 F.3d 678, 681-81 (7th Cir. 2006). An inmate must first attempt to resolve his complaint informally by submitting an informal resolution form. 28 C.F.R. § 542.13. Should the informal complaint fail, the inmate has 20 days from the complained-of event to file a formal Administrative Remedy Request (a "BP-9" form) to the warden. 28 C.F.R. § 542.14(a). If not satisfied with the warden's response, the inmate may file (on a "BP-10" form) a written appeal to the BOP's Regional Director "within 20 calendar days of the date the Warden signed" the BP-9 response. 28 C.F.R. § 542.15(a). Finally, if still unsatisfied, the inmate may – within 30 days of the Regional Director's response – file (on a "BP-11") an appeal to the BOP's General Counsel. 28 C.F.R. § 541.15(a). "Appeal to the General Counsel is the final administrative appeal." 28 C.F.R. § 541.15(a). An inmate's remedy form must focus on a single issue or a reasonable number of closely related issues. 28 C.F.R. § 542.14(c)(2). "If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response." *Id.*

## DISCUSSION

### A. FTCA Claim

Gary did not respond to the motion for summary judgment filed by the United States. He was, however, provided with notice of the summary judgment motion and informed of the consequences of failing to respond to it (Doc. 65). Specifically, Gary was informed that his failure to respond could amount to an admission of the facts asserted in the motion (*Id.*). Although Gary filed a response in opposition to the individual defendants' motion for summary judgment (Doc. 68), his response fails to address the FTCA claim or his attempts at

15

exhausting his claims with Tort Claim TRT-NCR-2002-01601. He does include a copy of the Tort Claim in his exhibits, but he fails to include any argument regarding the claim in his response (Doc. 68, p. 9).

Because Gary failed to respond to the United States's motion, the Court accepts the statement of facts as true. SDIL Local Rule 56.1(g) "all material facts…shall be deemed admitted for purposes of summary judgment unless specifically disputed." *See also Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (citing *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). The admission of the material facts, however, does not automatically grant the United States's motion for summary judgment; it must still demonstrate that it is entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

The United States concedes that Gary's Tort Claim exhausted Gary's claims in Count 1 and the portion of Count 2 related to the damaging noise levels in the unit. The Claim clearly discusses the operation of the fan outside of Gary's cell and the injuries to his ears (Doc. 64-1, p. 7). The United States argues, however, that the Tort Claim fails to include allegations regarding the excessive heat Gary experienced in the SHU and the emotional distress resulting from his placement there on false charges. TRT-NCR-2002-01601 does not include any allegations regarding the heat in the SHU or the closed windows (*Id*.). The Tort Claim merely states that Hill placed a 180-decibel fan outside of Gary's cell and the fan caused ringing in his ears and hearing loss (*Id*.). There are no allegations regarding the heat or the windows in the unit. Thus, Gary failed to exhaust his claims in Count 2 regarding the excessive heat in the unit.

As to his emotional distress regarding the false charges, Gary's Claim does mention being placed in the SHU on a false "shot" by Hill. But he fails to allege any emotional distress or injury as it relates to the false "shot." Although Gary's Complaint alleges that he suffered emotional distress because he was placed on suicide watch and was unable to communicate with his family when his daughter went missing, his Claim fails to include any information regarding suicide watch or the issues with communication. In fact, his Claim only notes emotional distress suffered as a result of the fan and the ringing in his ears. Nothing in the Claim put officials on notice that he was complaining about emotional distress suffered as the result of the false shot. Thus, Gary failed to exhaust his administrative remedies for this portion of Count 2 as well. Count 2 shall proceed only as it relates to Gary's injuries from the operation of the loud fan.

### B. *Bivens* Claim

As to Gary's *Bivens* claim, Defendants argue that Gary's administrative remedy was rejected as untimely because he filed it more than 20 days after his placement in the SHU. But Gary argues that his remedy was in regard to the conditions in the SHU in June and July. He acknowledges that his August remedy was still untimely but argues that he was unable to timely file an administrative remedy because he was unable to secure a BP-8 form from Nathan Simpkins. In essence, Gary argues that he was thwarted in his attempts to timely exhaust his remedy. *Ross v. Blake*, 578 U.S. 632, 644 (2016) (Administrative remedies can be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process."). *See also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Dole*, 438 F.3d at 809.

The Court finds Gary's testimony about his inability to file a timely administrative remedy to be credible. Gary testified that he was unable to obtain a BP-8 form from Simpkins until August 5, 2021. He argued that Simpkins required him to pursue his complaints informally before handing him a BP-8 form. And Simpkins was absent several days in June and July 2021, further delaying his access to the required form.

Besides being credible, Gary's testimony is supported by evidence in the record. Simpkins acknowledged that he had a policy of trying to resolve any issues with inmates informally before handing out a BP-8 form. Although he did not specifically recall a conversation with Gary about the heat and fan noise in the SHU, he admitted that there were many complaints about the conditions in the SHU during the relevant time period. He also acknowledged that it was not unusual to inform an inmate that he would have to look into their concerns before providing them with an informal response. Simpkins's timecard also noted that he was on leave for a week in June and took additional time off on several occasions throughout June and July. He also only worked four days a week and, when he was there, only toured the unit once a shift. Although there was testimony to suggest that the unit manager could also hand out BP-8 and BP-9 forms, there is simply no evidence in the record that a unit manager spoke to Gary or toured the SHU during that time. In fact, Sarah Byram acknowledged that the prison did not have any documentation or visual evidence to confirm that the officials made daily visits. Thus, there is simply no evidence to contradict Gary's credible testimony that he was unable to obtain a BP-8 form from Simpkins until August 5, 2021.

To further support his contention that his remedy was late through no fault of his own, Gary indicated Simpkins submitted a memorandum with Gary's BP-10 to help excuse

its lateness. Although Simpkins failed to recall writing a memo on behalf of Gary in this specific instance, he testified that he often wrote memos in support of the timeliness of an inmate's remedy. Simpkins testified that he submitted memos to help an inmate through the process because the process was long, and the timeliness was sometimes out of the inmate's control. There is no evidence of this memo in the record, but Simpkins testified that he would place the memo in the mail and the inmate would not receive a copy. The Court finds Gary's testimony that Simpkins submitted a memo on his behalf to be credible, and the submission of the memo supports Gary's contention that the untimeliness of the remedy was out of his control. Thus, the Court finds that Gary sought to file a timely remedy but was thwarted in that process.

Alternatively, Defendants argue that even if Gary's lateness was excused, his original BP-8 and BP-9 forms failed to include his allegations regarding the conditions in the SHU. An inmate must provide enough information in his remedy to give "prison officials a fair opportunity to address [an inmate's] complaints." *See Maddox v. Love*, 655 F.3d 709, 713 (7th Cir. 2011). Gary's BP-8 and BP-9 forms do not include allegations about the conditions he faced in the SHU. The remedies only note that he was wrongly placed in the SHU in April 2021 due to the actions of Kathy Hill and another inmate (Doc. 68, p. 8; Doc. 1-1, p. 36). At the hearing, however, Gary testified that there was an additional page attached to his BP-8 and BP-9 with his continued allegations. He noted that his BP-8 indicates that there is an attachment, but he did not receive the pages back with his rejection. The attachment included complaints about the heat in the unit and the use of the loud fans. Gary testified that he also submitted the attachment with his BP-10 and BP-11 forms.

The Court again finds Gary's testimony credible. His BP-8 form does indicate that there is an attached statement (Doc. 1-1, p. 36). Further, Gary attached the BP-11 statement to his response (Doc. 68, p. 6). The attachment stated that Kathy Hill falsely placed Gary in the SHU and personally had the windows closed in the extreme heat (*Id*.). She placed large industrial fans in front of Gary's cell and directed staff to keep the fans on high (*Id*.). The attachment only mentions the actions of Kathy Hill.

Gary testified that he did not receive a copy of the attachment back with his BP-8, and his personal copy was lost during a transfer. Sarah Byram acknowledged that attachments could be added to an administrative remedy, but the attachments would not be returned to the inmate. The inmate would only receive a copy of the rejection, and all other documentation would be discarded by the prison. The lack of a copy of the purported attachment in the record does not refute Gary's testimony because the prison did not maintain such copies. Thus, there is no evidence in the record to refute Gary's testimony that his BP-8 and BP-9 forms included an attachment complaining about the fan and heat in the SHU. The Court finds that Gary adequately sought to exhaust his administrative remedies by submitting a remedy about his conditions in the SHU but was thwarted from submitting a timely remedy. Gary did all that he could to exhaust his claims in Count 3 as to Kathy Hill. Neither Gary's BP-8 form or his attachment, however, mention any of the other defendants. Thus, the remedy does not exhaust his claims against Dan Sproul, Christopher David, J. LeClair, Nathan Simpkins, and George Howell. Accordingly, the remaining defendants are entitled to summary judgment on Gary's claims in Count 3.

CONCLUSION

For the reasons stated above, the United States's motion for summary judgment is **GRANTED**. The motion for summary judgment filed by Kathy Hill, Dan Sproul, Christopher David, J. LeClair, Nathan Simpkins, and George Howell is also **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to the claims in Count 3 against Dan Sproul, Christopher David, J. LeClair, Nathan Simpkins, and George Howell, but **DENIED** as to the claims against Kathy Hill. Thus, Gary's claims shall proceed as follows:

| | |
|---|---|
| Count 1: | FTCA claim for negligence under Illinois state law for the operation of the large fan directly outside of Gary's cell causing permanent hearing loss and tinnitus. |
| Count 2: | FTCA claim for intentional and/or negligent infliction of emotional distress under Illinois law for subjecting Gary to damaging noise levels. |
| Count 3: | Eighth Amendment claim against Kathy Hill for cruel and unusual punishment resulting from Gary's placement in the SHU with "sweltering heat" and the large fan. |

**IT IS SO ORDERED.**

**DATED:  March 18, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**