IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMES L. GARY,**

**Plaintiff,**

**v.**

**Case No. 3:23-CV-768-NJR**

**UNITED STATES OF AMERICA, KATHY HILL, DAN SPROUL, CHRISTOPHER DAVID, J. LECLAIR, NATHAN SIMPKINS, and GEORGE HOWELL,**

**Defendants.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court *sua sponte* for case management purposes. Plaintiff James L. Gary filed this action for deprivations of his constitutional rights pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–80, and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). (Doc. 1). Initially proceeding *pro se*, Gary moved for leave to proceed *in forma pauperis*. (Doc. 2). The Court granted his request with the usual admonition that he was “under a continuing obligation to keep the Clerk and each opposing party informed of any change in his address . . . . in writing and not later than fourteen (14) days after a transfer or other change in address occurs,” and that a failure to comply with this obligation “may result in a dismissal of this action.” (Doc. 14 at 3) (emphasis omitted)).

After surviving summary judgment on the issue of exhaustion (Doc. 75), the case proceeded to merits discovery, which was to be completed by January 9, 2026 (Doc. 76). On January 9, 2026, Gary requested and was granted an extension of the discovery deadline. (Docs. 81, 82). But the Court's order granting that extension was twice returned as undeliverable. (Docs. 83, 84). Accordingly, on February 23, 2026, Gary was ordered to show cause why his case should not be dismissed for failing to provide the Court with a current address. (Doc. 85). Gary's response deadline was April 22, 2026. *Id.* The Court warned Gary that failure to respond could result in a dismissal of his action with prejudice. *Id.*

Then, on March 25, 2026, Defendants Kathy Hill and the United States filed a motion seeking another order to show cause and raised some potentially troubling discrepancies. (Doc. 87). First, Gary's January 9 motion listed his address as a halfway house in Wichita, Kansas. (Doc. 81). But Bureau of Prisons (BOP) records indicate Gary had never resided there; indeed, he had never been housed in Wichita at all. (Docs. 87, 87-2, 87-3). At the time of the January 9 motion, according to the BOP records, Gary was living in a halfway house in Topeka, Kansas. *Id.* He was then released into home confinement on January 28, 2026 (though mail sent to the halfway house is held there to be picked up by Gary during his weekly check-ins). *Id.*

Further complicating the picture, according to Defendants, is the January 9 motion's apparent provenance: despite listing the Wichita address, the motion had been mailed from a UPS in Beaumont, Texas. (Docs. 87, 87-1). Defendants also claimed that Gary's purported signature on the January 9 motion appears dissimilar from each of the

other signatures he had filed with the Court at that point (an observation the Court confirmed for itself).[1] (Docs. 87, 88). Finally, Defendants noted they had been unable to contact Gary, and that he had not requested any additional discovery despite the extension. (Doc. 87).

The Court agreed that answers were warranted and issued another show cause order on March 30, 2026. (Doc. 88). After noting that the original show cause order was still in effect, Gary was ordered to show cause why the case should not be dismissed for filing, or causing to be filed, a document with a false address. *Id.* He was further directed to explain why his motion had been mailed from Beaumont, Texas, and why the signature on the motion differed in appearance from his previous signatures. *Id.* The response deadline was set for April 22, 2026, and Gary was again warned that a failure to respond could result in a dismissal with prejudice. *Id.*

On April 7, 2026 (roughly one week later), attorney William Thomas Norrid, III, entered an appearance on Gary's behalf. (Doc. 89). A little over a week later, Mr. Norrid contacted Defendants' counsel inquiring whether they had any objections to an extension to respond to Defendants' motion to show cause. Defendants' counsel replied that they would "probably not object to an extension," but that they needed to confer with BOP counsel, who was out of office. (Doc. 93 at p. 4). Gary's proposed motion for extension also contained a provision which Defendants contested. *Id*. It also appears that while

[1] Neither Defendants nor the Court have had the signatures examined by an expert. (Doc. 87). And the Court does not rely on any question of signature authenticity in today's order.

Gary's counsel discussed the potential extension, the substance of the motion itself was not shared with Defendants' counsel. (Doc. 93 at p. 5).

Gary then failed to respond to this Court's two show cause orders by their respective deadlines. On April 27, 2026, his counsel seeking an extension to file a response to the show cause order whilst stating that the motion was "unopposed" (Doc. 90), when it was, in fact, opposed. Defendants' counsel had stated she had no problem with an extension but objected to a substantive provision in the motion. (Doc. 93 at p. 4). After Defendants' counsel reminded Mr. Norrid that Gary had failed to respond to discovery, Mr. Norrid was not heard from again.

Before obtaining a definitive answer from Defendants' counsel, Gary filed a second motion (Doc. 92), labeled "opposed"—without withdrawing his first motion—leaving two contradictory motions, with no explanation, on the record. Counsel for Defendants filed a consolidated response to Gary's two motions, and no reply was filed. (Doc. 93).

## LEGAL STANDARD

Federal Rule of Civil Procedure 41(b) provides for involuntary dismissal of an action for failure to prosecute or to comply with court orders. FED. R. CIV. P. 41(b). "Once a party invokes the judicial system by filing a lawsuit, it must abide by the rules of the court; a party cannot decide for itself when it feels like pressing its action and when it feels like taking a break . . . ." *James v. McDonald's Corp.*, 417 F.3d 672, 681 (7th Cir. 2005). If a party fails to litigate its claims or otherwise abide by the court's orders, the court has the inherent authority to *sua sponte* dismiss the matter. *Id.; O'Rourke Bros. Inc. v. Nesbitt*

*Burns, Inc.*, 201 F.3d 948, 952 (7th Cir. 2000). Among the considerations when deciding whether to enter an involuntary dismissal are a plaintiff's failure to comply with deadlines; whether the responsibility for mistakes is attributable to the plaintiff himself or the plaintiff's attorney; the effect of the mistakes on the judge's calendar; and the prejudice caused to the defendants. *Wyatt v. Chapman*, 2019 WL 2088460, at *1 (S.D. Ill. May 13, 2019) (citation modified). Where a *pro se* plaintiff has engaged in "ordinary misconduct" (e.g., failing to comply with an order), dismissal of the matter with prejudice is appropriate after the Court has warned the plaintiff. *McInnis v. Duncan*, 697 F.3d 661, 665 (7th Cir. 2012) (citations omitted).

## DISCUSSION

Gary has consistently flouted the Court's orders and procedures. A court may dismiss an action with prejudice under Federal Rule of Civil Procedure 41(b) if the plaintiff fails to prosecute or to comply with court orders, but it must exercise this right sparingly. *Allen v. Wexford Health Sources*, 2026 WL 810965, at *1–2 (S.D. Ill. Mar. 24, 2026) (citing FED. R. CIV. P. 41(b)). In light of Gary's failure to keep the Court apprised of his address, his inability to keep with Court deadlines, his failure to respond to discovery, and his lack of candor, the Court finds that dismissal is justified.

### I. Failure to Keep Court Apprised of Address Changes

In a Notice and Order dated March 2, 2023, the Court informed Gary that any address changes must be communicated to the Court within seven days via a Notice of Change of Address, and that failure to comply could result in the case's dismissal. (Doc. 3). To his credit, Gary notified the Court of address changes multiple times: from

FCI Terre Haute to FCI Schuylkill in September 2023 and again to USP Canaan in April 2025. (Docs. 11, 77). He submitted another change of address in September 2025 informing the Court that he was in Topeka, Kansas. (Doc. 80). However, in a Motion for Extension filed in January 2026, he listed his address as a halfway house in Wichita, Kansas. (Doc. 81). But according to BOP records, Gary was never housed at an RRC in Wichita. (Docs. 87, 87-2, 87-3). And no address change was submitted accounting for the discrepancy between Topeka and Wichita. Gary's claim that "AUSA Jones has always been able to locate Plaintiff" does not excuse his own failure to update the Court. Gary alone bears the onus of keeping the Court apprised of his address regardless of whether Defendants' counsel independently knew of his whereabouts.

## II. Failure to Comply with Court Deadlines

District courts are entitled to expect parties to comply with their deadlines and will not hesitate to strictly enforce them. *See, e.g., Rhodes v. Werries*, 2023 WL 3335077, at *1 (C.D. Ill. Apr. 21, 2023) (citing *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015), *aff'd,* 2024 WL 4850047 (7th Cir. Nov. 21, 2024); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006).

The Court acknowledges that legitimate grounds, including illness, technological difficulties, and emergencies, may necessitate an adjustment to a deadline. Where such grounds arise, alone or in combination, a party may move for an extension. *See McCann v. Cullinan*, 2015 WL 4254226, at *1 (N.D. Ill. July 14, 2015) ("On occasion, deadlines need to be adjusted for a variety of valid reasons, including, but not limited to illness, mishaps, electronic discovery snags, true emergencies . . ."). And if a deadline has already passed,

a party may still move to extend if the movant can demonstrate "excusable neglect." FED. R. CIV. P. 6(b)(1). When assessing excusable neglect, the central factor is the reason for the delay. *See Knapp v. Evgeros*, 205 F. Supp. 3d 946, 951 (N.D. Ill. 2016).

The Court issued *two* show cause orders to be responded to by April 22, 2026 (Docs. 85, 88). Neither was responded to in time. Gary's counsel, Mr. Norrid, entered an appearance on April 7, 2026 (Doc. 89) and submitted an extension request to respond to the show cause orders on April 27, 2026. (Doc. 90). Without delving into the inconsistent and opaque Motion that was Gary's First Motion for Leave (Doc. 90), suffice it to say, Gary, by and through his counsel, did not make an adequate showing of excusable neglect.[2] *See Satkar Hospitality, Inc. v. Fox Television Holdings*, 767 F.3d 701, 707 (7th Cir. 2014) (explaining that a moving party must demonstrate a "good reason" for missing the deadline).

**III. Failure to Respond to Discovery**

Having invoked the judicial system by filing a lawsuit, Gary must abide by the rules of the court and cannot simply decide when he feels like pressing his action and when he feels like taking a break. *Moir v. Amdahl*, 2018 WL 3368428, at *1 (S.D. Ill. July 10, 2018) (citing *James v. McDonald's Corp.*, 417 F.3d 672, 681 (7th Cir. 2005)). This seems to be how Gary has proceeded in this case. He has failed to respond to the Government's discovery requests and has not appeared to submit any discovery requests himself. *See* Doc. 93 at p. 9–10.

[2] Gary's skeletal Motion for Leave (Doc. 90) mentioned his counsel being in trial and needing to attend to family matters out of town, however, it did not include enough explanation to warrant the conclusion that an extension was reasonable.

### III. Lack of Candor

Contumacious conduct under Federal Rule of Civil Procedure 41(b) that may merit dismissal includes fault, bad faith, and willfulness. *Raziev v. Compass Truck Sales, LLC*, 2016 WL 1449933, at *8 (N.D. Ill. Apr. 13, 2016). There are multiple instances of improper conduct on Gary's part. Each incident alone may not seem consequential but when considered together, it evinces a pattern of a lack of candor.

First, Gary was not forthcoming about his addresses. Filings submitted within a month of each other reflected two different cities in the state of Kansas—both nearly 150 miles apart.[3] Gary also has yet to provide his home address or explain why he has not done so. Next, Gary states that he could not respond to the Court's orders or Defendants' discovery requests because he did not have access to a law library and/or legal material. (Doc. 91 at p. 2). It strains credulity to think one needs access to a law library or legal database to respond to discovery requests or respond to show cause orders.

Gary's assertion that the "halfway house requires [him] to come there once a week and [] require him to use their address for all mail" appears disingenuous. (Doc. 93 at p. 9). There were and are no restrictions in place preventing Gary from receiving his mail at home. *Id*.

Then there is the issue of the forged signatures. Gary openly admits that he had a "friend," Christopher Manning, "prepare, sign his name, and mail" pleadings to the

[3] Google Maps, - https://www.google.com/maps/dir/wichita/topeka+kansas/data=!4m6!4m5!1m0!1m2!1m1!1s0x87bf02e4daec7a29:0xbe2be7d06ae3a7f0!3e0?sa=X&ved=1t:196274&ictx=111 (last visited Nov. 12, 2026); FED. R. EVID. 201.

Court. (Doc. 91 at p. 2). Under Rule 11, every pleading, motion, or other paper must be signed by an attorney of record in the attorney's name *or* by a party personally if the party is unrepresented. FED. R. CIV. P. 11(a). Non-attorneys cannot file or sign papers for another litigant. *Deonn-Hellems v. USA*, 2019 WL 2601694, at *2 (S.D. Ill. June 25, 2019) (citing *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 831 (7th Cir. 1986)). Gary has not asserted that Christopher Manning is an attorney—let alone *his* attorney. The pleadings signed by Christopher Manning were filed while Gary was proceeding *pro se*. And while *pro se* litigants are awarded leniency, they may not disobey or ignore federal rules with impunity. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced.").

The last instance is perhaps the most concerning. Gary's first motion on April 27, 2026 (Doc. 90), stated without ambiguity that Defendant United States was not opposed to his request to file his response to show cause out-of-time, and the second such motion stated that the motion was, in fact, opposed. (Doc. 92). Not only did Gary initially misstate counsel's agreement with the motion, he also conflated Defendants and their counsel and incorrectly claimed that Defendants' counsel was "out of office." (Doc. 93 at p. 4). Gary's later correction in his "Opposed Motion for Leave to File Plaintiff's Response" (Doc. 92). did not adequately proffer an explanation as to the misstatements and lack of clarity.

## CONCLUSION

The Court is mindful of the fact that Gary was proceeding *pro se* for most of the time that this matter was active and appreciates the difficulties in doing so especially while incarcerated. It has accordingly extended wide latitude to prosecute this case. That

does not excuse him, however, from complying with the Court's orders and procedures. Mr. Norrid began representing Gary in this matter in April of this year. (Doc. 89). It is not outside the realm of possibility that Gary, *pro se*, would not have known to withdraw the "Unopposed Motion" seeking extension, but attorneys are held to a higher standard. Not only did Mr. Norrid fail to follow procedure, he also was at best, reckless with the facts regarding the Government's opposition, vacation, and scheduling logistics—and at worst, duplicitous. Having considering the actions of Mr. Gary and Mr. Norrid in their entirety, they have engaged in contumacious conduct in violation of Rule 41(b). Accordingly, the Court finds that dismissal is warranted.[4]

The Court **ORDERS** that this action is **DISMISSED with prejudice** pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: November 13, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

[4] This dismissal does *not* count as one of Gary's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).